[L. A. No. 126.  In Bank.—February 11, 1898.]

## W. H. SPURGEON, Appellant, v. SANTA ANA VALLEY IRRIGATION COMPANY, Respondent.

CORPORATIONS—CHARTER AND BY-LAWS OF IRRIGATION COMPANY—STOCK APPURTENANT TO LAND—ASSESSMENTS—SALE OF DELINQUENT STOCK—SEVERANCE FROM LAND—RIGHTS OF PURCHASER UNDER GENERAL LAW.—Where the charter and by-laws of an irrigation company provided that water was to be delivered only to stockholders who were owners of land, that the stock was to be transferable only with the land for which it was issued, and the water to be appurtenant to the land, unless otherwise ordered, upon the written order of the owner, such provisions have no application to a sale of delinquent stock for non-payment of assessments, the effect of which is to be determined by the general law, and the stock in such case is severed from the land to which it was made appurtenant under the by-laws, and the purchaser of the stock at delinquent sale has the right to have stock and water delivered to him to the extent of his purchase for the irrigation of land owned by him, to enable him to enjoy the fruits of his purchase.

APPEAL from a judgment of the Superior Court of Orange County.  W. H. Clark, Judge.

The facts are stated in the opinion of Mr. Chief Justice Beatty.

James G. Scarborough, for Appellant.

E. E. Keech, for Respondent.

BEATTY, C. J.—The question in this case relates to the rights of the plaintiff under a purchase of stock in the corporation defendant. A demurrer was interposed to his complaint which was sustained by the court, and, declining to amend, final judgment was entered in favor of defendant. Plaintiff appeals, and the judgment-roll constitutes the record.

The complaint seems to have been drawn, and as we think wisely, with the object of presenting squarely the legal questions involved in the case, and which, whether so presented or not, must necessarily be met and decided sooner or later in its progress. It appears from such complaint that defendant is a corporation organized and existing under and by virtue of the laws of the state of California.

Among the purposes of the corporation, as expressed in its articles of incorporation, are the following:

"To deliver water for the purpose of irrigation to the owners of land in the Rancho Santiago de Santa Ana, susceptible of irrigation from the waters of the Santa Ana river; said water so delivered to be taken from the south side of the Santa Ana river, at and near what is known as Bed Rock canyon, and to be delivered under the following conditions:

"1. The company will act only as an agency for delivering said water to said owners whose right to use the same is appurtenant to their said lands.

"2. It will deliver water to no one who has not purchased one share of the stock of the company for each acre or fractional part thereof of irrigable land owned by him along the canal of the company, and agreed with the company that said stock shall be transferable only with the land for which it is issued, and that the water delivered shall be used only on the land for which it is issued; provided, that the company may, under such rules as the board of directors shall establish, deliver the water appurtenant to one parcel of stocked land upon other stocked land on the written consent of the owner of the first parcel, filed

with the company, which consent shall not be valid for a longer term than one year; and further provided that in case any land for which the owner has purchased stock as above specified shall become nonirrigable for any reason, and the owner thereof shall file with the company and record in the office of the county recorder of the county in which the land lies a written disclaimer to all future rights or use of said water from said Santa Ana river, and make due proof to the satisfaction of the company that his lands are nonirrigable, the company may allow said stock to be transferred to other unstocked lands lying along the ditches of the company."

The following of the by-laws and rules of defendant are set out:

### "By-law XVI.

"Shares of stock in this company shall not be transferable except with the land for which it is issued, and a conveyance of the land shall legalize a transfer of the stock to the purchaser.

"Each subscriber of the stock of this company shall be required to purchase one share of the stock for each acre of land owned by him and located under the canals of the company, and the stock shall not be issued either in a greater or less quantity than one share per acre, or fractional part thereof, of irrigable land.

### "By-law XXI.

"Water shall be distributed for irrigating purposes from the main canals of the corporation in such manner as shall be most equitable and just to all parties interested therein, and, other things being equal, in regular rotation to all gates on said canal; always providing that no water be distributed except to stockholders, and that no water shall be sold by the company or furnished to any stockholder to be run on land not covered by stock."

### "Rules.

"No stockholder shall be allowed to receive water or make use of his or her water stock until a certificate of stock has been issued and the stock-books of the company signed.

"Passed December 27, 1891.

"The water appurtenant to one parcel of stocked land may be delivered upon another parcel of stocked land, unless other-

wise ordered by the board, upon the filing of a written order from the owner of the first parcel of land, and the owner of the stock located thereon, with the secretary of the company at least forty-eight (48) hours prior to the time of the delivery of the water.

"Passed May 2, 1892."

Each of the certificates of stock issued by defendant, after setting forth date, number, name of stockholder, number of shares, etc., contained the following words:

"Transferable on the books of the company by indorsement hereon and surrender of this certificate, and on purchase by the transferee of the land covered by this certificate. The land covered by this certificate is described as follows, to wit":

Here follows in each certificate description of land owned by the party named in the certificate, or by his grantee.

In 1891, and again in 1892, defendant levied in due form certain assessments upon its capital stock, which assessments becoming delinquent the stock was sold and the plaintiff became the purchaser thereof, viz., the purchaser of the shares of sundry of the stockholders, aggregating, say, forty shares of the capital stock of defendant.

These sales are shown by apt averment to have been regular in form, and sufficient in law to pass the title to such shares, so far as under the provisions of the articles of incorporation and by-laws of defendant, and the laws of California, might be done by such sale.

Thereupon plaintiff applied to defendant, and demanded that certificates of stock issue to him for the shares by him so purchased, but without the clause "Transferable on the books of the company by indorsement thereon and surrender of this certificate and on purchase by the transferee of the land covered by this certificate," followed by a description of the land so covered.

The defendant refused to deliver to plaintiff the certificates, without the above clause and description of the land being incorporated therein, but was ready and willing to issue to him such certificates with said clause inserted. Neither plaintiff nor defendant owned any of the lands described in the certificates representing the shares by him purchased.

Plaintiff also demanded that defendant furnish to him water from its ditch, to irrigate land by him owned in the "Rancho Santiago de Santa Ana," along or near the water ditches of defendant and susceptible of irrigation therefrom and from the waters of the Santa Ana river.

The water so demanded was that to which the plaintiff claimed to be entitled by virtue of his purchase of forty shares of stock in the defendant company aforesaid, and, if procured, was not to be used upon any of the land described in the certificates representing said stock so purchased.

Plaintiff offered to pay all costs and expenses of delivering the water as fixed by defendant. Defendant refused to deliver the water to plaintiff.

Defendant's demurrer was both general, for want of facts, and special upon various grounds. As to all the special grounds set forth it was overruled, and it was sustained upon the sole ground that the facts alleged did not constitute a cause of action. This ruling was erroneous. Upon the facts alleged, the plaintiff was entitled to certificates of stock in the form in which he demanded them; that is to say, without an indorsement which would render them valueless to him and incapable of transfer. If the defendant could sell the stock of delinquent shareholders —as it assumed to do—certainly the purchaser was entitled to receive certificates for his shares in such form as would enable him to enjoy the ordinary rights of a stockholder, unless there was something in the charter or by-laws of the company inconsistent with such rights. The validity of a by-law which would abridge the ordinary rights of a purchaser of stock at a delinquent sale would certainly be open to serious question, and much of the argument of counsel has been devoted to this feature of the case. But we find it wholly unnecessary to decide whether in any particular the charter or by-laws of the defendant are in conflict with the laws of the state; for, as we construe them, they are entirely consistent with plaintiff's demand.

The charter does not say that certificates of stock will not be issued until the subscriber or purchaser has agreed that it shall be transferable only with the land for which it is issued, etc. What it does say is that the company will deliver no water except upon the conditions named. No doubt it was con-

templated in the organization of the company that stock would be issued only to such subscribers as had land of the requisite character to enable them to receive water, and that the certificates should show to what particular tracts the right to irrigate was attached. But for the case of delinquent stock sold for assessments no provision was made, either expressly or by implication, in the charter or in the by-laws, and, therefore, the rights of a purchaser at such sale must be determined by the general law. Under that law, he has a right to receive certificates for the shares he has purchased, and to come into the corporation as a shareholder on the same footing with the other shareholders. If shares are issued to him without the special indorsement insisted upon in this case by the defendant, he is put upon the same footing with other shareholders, and that without any injury to the company or infringement of its by-laws. He is not by virtue of the mere issuance of the shares entitled to receive any water, and the company is not compelled to deliver any water at any time or place or in any manner inconsistent with its charter or rules. Like an original subscriber, he must become the owner of land within the district designated in the charter and in other respects conforming to its conditions. When he has acquired such land, he may then, with the consent of the company—which it would have no right unreasonably to withhold—have his shares ascribed to such land by indorsement on the certificate, or in any other convenient method.

The company by its act in selling the delinquent stock, and the original holder by violation of the condition upon which he held it, have effectually severed the connection between the stock in question here and the land to which it was originally ascribed, and there is nothing in the charter or by-laws to prevent its assignment to other lands of like character within the proper district as may be done in the analogous case expressly provided for in the charter. Until this is done it is no disadvantage to the corporation or its other stockholders that these shares should be held in a form that will enable the plaintiff to use them or transfer them. As they do not now and never can oblige the company to deliver water to the plaintiff or any assignee until they are ascribed to land of the requisite character, there is no reason why they should not be issued in a form ad-

mitting of their free assignment.   Until so ascribed they do
not come within either the letter or the spirit of by-law No.
XVI, which, like the other by-laws, relates only to voluntary
transfers by shareholders; and has no application to a transfer
effected by the corporation itself through the medium of a de-
linquent sale.   The purchaser at a delinquent sale is the trans-
feree, not of the former owner of the stock, but of the corporation
itself.   He comes in on the footing of an original subscriber, at
least he can claim from the corporation all the privileges of a
subscriber so far as necessary to enable him to enjoy the fruits
of his purchase.

In this case, the plaintiff shows that he is the owner of land
of the requisite quantity, location, and character upon which to
locate this stock, and we can perceive no reason why he should
not have the stock, and if he demands it have it located.

It is certainly a strange position for the defendant to take
to claim that its vendee has no title to the stock it has sold him,
or to claim that he has only such a title as will make him liable
for assessments without any right to the only dividends that
the company makes, i. e., water furnished for irrigation.

The judgment is reversed and cause remanded, with directions
to the superior court to overrule the demurrer.

Van Fleet, J., concurred.

TEMPLE, J., concurring.—I concur in the judgment, but I
am not willing even by silence to seem to assent to the proposi-
tion, that the stock of a corporation can be made exempt from
execution and practically unassessable by any possible by-laws.
If the position of respondent be sustained, that has been
accomplished. By this scheme the water is not made ap-
purtenant to the several tracts of land, but the corporation
stock is thus converted into an appurtenance. Make one of the
tracts a homestead, and the stock becomes at once exempt from
execution, and the corporation can no longer collect assessments
in the statutory mode. I do not dispute the proposition that
one who purchases stock is bound by the articles and also by
the by-laws, of the corporation, but in this state, where corpora-
tions are formed under general laws, such laws are themselves
part and parcel of the charter of the corporation, and as such

are beyond the control of the corporators. They can make no by-laws which conflict with or displace these. These laws expressly make stock subject to execution for the debts of the stockholder, and authorize the directors to levy assessments. The law also provides the mode in which the assessment may be enforced by sale and expressly declares the effect of the sale. Creditors of the corporation have an interest in this power, and may sometimes compel the corporation to exercise it. It cannot be waived or destroyed by anything in the by-laws or by any contract between the stockholders.

Corporations may be formed for any purpose for which men may lawfully associate themselves, but men cannot, by any association or contract between themselves, make their property exempt from execution. If people will conduct their business by means of corporations they must hold their corporate property and conduct such business under the corporation laws of the state. In spite of all they can do, such laws will constitute their corporate charters.

It is not necessary to say what rights the purchaser will acquire under the sale, but I think it plain that he cannot be held to be a stockholder and liable to assessment and still be deprived of all benefits of being a stockholder, nor can he be compelled to purchase any particular piece of land to get such benefit. Under the claim of respondent, if the former owner of the stock has put a homestead on his land the corporation could not sell the land to collect the assessment, and he need not concern himself as to the ownership of the stock if the right to the use of the water has become an appurtenance to the land. And if it has not become an appurtenance, and the result is simply that the water can be used nowhere else, he is not much worse off, for the stock is worthless to anyone else, and if not in law inalienable has become unsalable. Such a scheme, in my opinion, is against public policy as declared in the statutes concerning corporations.

Henshaw, J., concurred.

McFARLAND, J., dissenting.—I dissent, and think that the judgment should be affirmed. There is nothing in the articles of incorporation or the by-laws that is unconstitutional, in conflict

with general laws, or for any reason invalid; and, in my opinion, the charter and by-laws clearly provide that there shall be no ownership of shares of stock in gross—that is, an independent ownership attached to the person, and not by virtue of ownership of specific land. By-laws bind the company—the body corporate—as well as the stockholders; and the corporation cannot sever the shares of stock from the land described in them by the device of a sale for assessments any more effectively than it could do so in any other way. It could collect assessments by suit; but, if it undertakes to dispose of the shares assessed at forced sale, the purchaser takes them impressed with the character given them by the charter and by-laws; and if, with that character, they are not valuable to him, he has simply made a bad bargain with his eyes open.